UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

GGNSC LOUISVILLE HILLCREEK, LLC, et
al.,                                                                    Plaintiffs,

v.                                                        Civil Action No. 3:15-cv-902-DJH

DIANE WATKINS,                                                    Defendant.

\* \* \* \* \*

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiffs, entities associated with Golden LivingCenter-Hillcreek nursing home (hereinafter GGNSC),[1] petition this Court under the Federal Arbitration Act to compel arbitration of Defendant Diane Watkins's state court claims of nursing home negligence. Before filing an answer to Watkins's state court claims, and fearing an adverse ruling in state court due to potentially unfavorable Kentucky Supreme Court precedent, GGNSC sought relief in this Court. Watkins then filed a motion to dismiss GGNSC's petition, arguing that this Court should abstain from exercising jurisdiction. It will not. Because there is a valid arbitration agreement, the Court will grant GGNSC's request to compel arbitration and deny Watkins's motion to dismiss.

I.        BACKGROUND

Three years ago, Defendant Diane Watkins admitted Ruth Walton into Golden LivingCenter-Hillcreek, a nursing home in Louisville, Kentucky. (Docket No. 1, PageID # 5) At that time, Watkins exercised control over Walton's affairs pursuant to a Power of Attorney

---

[1] These entities include GGNSC Louisville Hillcreek, LLC; GGNSC Administrative Services, LLC; GGNSC Holdings, LLC; GGNSC Equity Holdings, LLC; GGNSC Equity Holdings II, LLC; Golden Gate National Senior Care, LLC; Golden Gate Ancillary, LLC; GGNSC Clinical Services, LLC; and GPH Louisville Hillcreek, LLC.

(POA).  (*Id.*)  Walton's POA expressly authorized Watkins to "arbitrate or dispose of any lawsuit" on her behalf, to "take all lawful means and equitable and legal remedies and proceedings in [her] name," and to "enter into contracts of whatever nature or kind."  (D.N. 6-1, PageID # 86)  Watkins signed an arbitration agreement with GGNSC on Walton's behalf.  (D.N. 1, PageID # 5)  The agreement requires the arbitration of "[a]ny and all disputes arising out of or in any way relating to this Agreement or [Walton's] stay at the facility."  (*Id.*)

During Walton's time at Golden LivingCenter-Hillcreek, she allegedly received inadequate care.  (D.N. 8-1, PageID # 110)  On November 24, 2015, Watkins sued GGNSC in Jefferson Circuit Court for negligence, medical negligence, corporate negligence, violations of long term care residents' rights, and administrator negligence.[2]  (D.N. 6-1, PageID # 7)  Before filing an answer in state court, GGNSC filed this suit under 28 U.S.C. § 1332(a)(1) and the Federal Arbitration Act (FAA), requesting that this Court compel arbitration and enjoin Watkins from pursuing her state court action.  (*Id.*, PageID # 4)  GGNSC filed a motion seeking the same relief.  (D.N. 5)  About two weeks later, in apparent response to the federal litigation, Watkins asked the Jefferson Circuit Court to declare the arbitration agreement invalid.  (D.N. 6-3)  This prompted GGNSC to move for a preliminary injunction, asking this Court to prevent the state court action from proceeding.  In addition, Watkins moved to dismiss, contending that there are six distinct grounds requiring dismissal.  (D.N. 8)

The Court heard oral argument on the motion for preliminary injunction on February 24, 2016.  (D.N. 20)  After careful consideration, the Court finds it unnecessary to address the motion for preliminary injunction.  The Court will deny Watkins's motion to dismiss and grant GGNSC's motion to compel arbitration.  Watkins will be enjoined from proceeding against

---

[2] *Watkins v. GGNSC Louisville Hillcreek LLC*, 15-CI-005941 (Jefferson Cir. Ct.).

GGNSC in the Jefferson Circuit Court action, and the dispute between the parties will proceed to arbitration.

## II.    MOTION TO DISMISS

The Court will deny the motion to dismiss on all grounds.  The motion's kitchen-sink approach is unpersuasive; the Court notes that Watkins's counsel has filed similar motions without success in other courts.  *See, e.g.*, *GGNSC Frankfort, LLC v. Tracy*, No. 14-30-GFVT, 2015 WL 1481149, at *1 (E.D. Ky. Mar. 31, 2015); *Sun Healthcare Grp., Inc. v. Dowdy*, No. 5:13-CV-0169, 2014 WL 790916, at *1 (W.D. Ky. Feb. 26, 2014).  Nevertheless, the Court will address each of Watkins's claims in turn.

### A. Jurisdiction

Despite Watkins's claim to the contrary (D.N. 8-1, PageID # 116), this Court has jurisdiction under 28 U.S.C. § 1332(a)(1).  (*See* D.N. 1)  Watkins contends that this Court must look through to the underlying state court case and that the presence of two nursing home administrators as defendants in the state case defeats diversity here because the administrators, like Watkins, are residents of Kentucky.  (D.N. 8-1, PageID # 118)  Her contention relies on a misunderstanding of *Vaden v. Discover Bank*, 556 U.S. 49 (2009).  Contrary to Watkins's argument, *Vaden* is inapplicable here.  In *Vaden*, the Supreme Court held that a district court must "look through" to the underlying suit for a § 4 petition to determine whether it "is predicated on an action *that 'arises under' federal law*." *Id.* at 62 (emphasis added).  This Court joins a growing contingent of courts in concluding that *Vaden* only applies to federal question jurisdiction.  *See Northport Health Servs. of Ark., LLC v. Rutherford*, 605 F.3d 483, 490-91 (8th Cir. 2010); *Tracy*, 2015 WL 1481149, at *3; *Healthcare Group*, 2014 WL 790916, at *1.  Thus, the Court will not look through to the underlying suit, and diversity jurisdiction exists.

**B. Indispensable Parties**

Watkins incorrectly contends that the Court should dismiss this suit for failure to join indispensable parties, namely the two nursing home administrators who are defendants in the state court case. (D.N. 8-1, PageID # 111)  But their mere presence in the state court action does not make them indispensable here.  *See PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 203-04 (6th Cir. 2001).  Federal Rule of Civil Procedure 19 instructs that a party is required to be joined if feasible if "in that person's absence, the court cannot accord complete relief among existing parties."  Fed. R. Civ. P. 19(a)(1)(A).  This is not the case here.  The Court can and will decide the entire controversy without the administrators being named in the suit.  *See PaineWebber*, 276 F.3d at 205.   Though the Court's decision here may affect Watkins's claims against the administrators, the administrators need not be parties for the Court to enforce the agreement.

Rule 19 also requires a party to be joined if

> that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1)(B).  Again, this is not the case here.  The absent administrators have the same interest as GGNSC in this case: to compel arbitration.  And the existing parties will not incur inconsistent obligations.  Instead, a ruling compelling arbitration in this Court will bind the parties in the parallel state court action with respect to the enforceability of the arbitration agreement.  Because the parties are not required to be joined under Rule 19(a), the Court need not address Rule 19(b).  *See Sch. Dist. of City of Pontiac v. Sec'y of U.S. Dep't of Educ.,* 584 F.3d 253, 264-65 (6th Cir. 2009) (if the absent party is not required under Rule 19(a), then there

is no reason to go to the second step of the analysis because Rule 19 does not foreclose the litigation).  The Court therefore finds that the administrators are not indispensable parties.

### C. *Colorado River*

Watkins next asks the Court to abstain from exercising its jurisdiction.  (D.N. 8-1, PageID # 126)  Ironically, in Watkins's response to GGNSC's motion for preliminary injunction, Watkins vigorously argues that the Court has jurisdiction and would not lose jurisdiction even if the state court ruled on the validity of the arbitration agreement.  (D.N. 16, PageID # 191-92) Nevertheless, the Court will consider Watkins's argument.

In *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976), the Supreme Court acknowledged the general rule that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction."  But then it found that the "general principle is to avoid duplicative litigation" between parallel state and federal court suits.  *Id*.  Still, *Colorado River* emphasized that abstention was the exception, not the rule, stating that "abstention is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it."  *Id*. at 813.

To determine if the Court should abstain, the Court must weigh eight factors.  *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 886 (6th Cir. 2002).  But first, as a threshold matter, the Court must consider whether the concurrent state and federal actions are actually parallel. *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998).  The Court concludes that they are.  GGNSC is correct that the procedural postures of the cases and the parties are slightly different.  (D.N. 17, PageID # 213-14)  But more importantly, the conclusion of the state court action would dispose of the claims before this Court.  *See Preferred Care of Del., Inc. v.*

*Vanarsdale*, No. 5:15-cv-342-JMH, 2016 WL 319880, at *1 (E.D. Ky. Jan. 26, 2016).

Consequently, the suits are sufficiently parallel.

> The eight factors to be considered are
>
> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; . . . (4) the order in which jurisdiction was obtained[;] . . . (5) whether the source of governing law is state or federal; (6) the adequacy of the state-court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

*Great Earth*, 288 F.3d at 886 (internal quotation marks omitted).  These factors weigh heavily against abstention.  First, property is not at issue.  Second, this Court is just as convenient for the parties as the state court; the two courts sit in the same city.  Third, the Court will compel arbitration here, which will completely avoid any piecemeal litigation.  Fourth, this Court obtained jurisdiction over the arbitration issue first.  Fifth, the governing law here, the FAA, is federal.  Sixth, it is unlikely that the state court will adequately protect GGNSC's contractual right to arbitrate in light of the Kentucky Supreme Court's recent holding in *Extendicare Homes, Inc. v. Whisman*, No. 2013–SC–000426–I, 2015 WL 5634309 (Ky. Sept. 24, 2015).  Seventh, the proceedings are at the same point.  And eighth, there is concurrent jurisdiction.

Nearly every factor weighs against abstention.  Accordingly, the Court will exercise jurisdiction.

### D.  Failure to State a Claim

Watkins contends that the suit should be dismissed pursuant to Rule 12(b)(6) because the underlying arbitration agreement is invalid.  (D.N. 8-1, PageID # 128)  This argument is meritless.

To survive a motion to dismiss for failure to state a claim, GGNSC's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Factual allegations are essential; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court need not accept such statements as true. *Id.*  A complaint whose "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" does not satisfy the pleading requirements of Rule 8. *Id.* at 679.  Under this standard, GGNSC's complaint is sufficient.

Watkins argues that GGNSC does not allege a transaction involving interstate commerce. (D.N. 8-1, PageID # 129)  The complaint, however, alleges that the "transactions and contracts or agreements that are the subject of this action involve commerce among the several states (i.e., interstate commerce)." (D.N. 1, PageID # 4)  The FAA provides that an arbitration clause, such as the one in dispute, in "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The Supreme Court has interpreted these words broadly and found that the FAA's reach is as expansive as Congress's reach under the Commerce Clause. *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 274 (1995).  The Commerce Clause "may be exercised in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice . . . subject to federal control." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-

57 (2003) (internal quotation marks omitted).  In *Glen Manor Home for Jewish Aged v. N.L.R.B.*, 474 F.2d 1145 (6th Cir. 1973), the Sixth Circuit found that the nursing home industry's aggregate economic activity, such as receiving Medicaid funding and dealing with interstate vendors, affected commerce.  *See id.* at 1149.  The Court therefore finds GGNSC's allegation that the arbitration agreement involved interstate commerce to be plausible.

Watkins next argues that she lacked authority under the POA to bind Walton to arbitration.  (D.N. 8-1, PageID # 129)  The Court disagrees.  Watkins relies heavily on *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581 (Ky. 2012).  In *Ping*, the Kentucky Supreme Court did, as Watkins contends, hold that the scope of authority created in a POA agreement must "*generally . . .* be express."  *Id.* at 592 (emphasis added).  Watkins ignores the word "generally." Moreover, Watkins fails to mention that the Kentucky Supreme Court also found that "[a]bsent authorization in the power of attorney to settle claims and disputes or some such express authorization addressing dispute resolution, authority to make such a waiver is not to be *inferred lightly*."  *Id.* at 593 (emphasis added).

The Court does not infer this waiver lightly.  Instead, the Court reads the POA to give Watkins the explicit authority to enter into an arbitration agreement on Walton's behalf.  The POA authorizes Watkins to "arbitrate or dispose of any lawsuit" on her behalf, to "take all lawful means and equitable and legal remedies and proceedings in [her] name," and to "enter into contracts of whatever nature or kind."  (D.N. 6-1, PageID # 86)

The Kentucky Supreme Court's recent holding in *Whisman* does not alter this Court's conclusion.  In *Whisman*, the court examined various POAs and found that they did not grant the attorneys-in-fact authority to enter into arbitration agreements.  *See* 2015 WL 5634309 at *10-15.  The court examined the language of each document and held that a POA must explicitly

8

authorize an attorney-in-fact to execute an arbitration agreement. *Id*. at *15-18. *Whisman* is inapplicable to this case because the POA at issue here specifically authorizes Watkins to arbitrate on Walton's behalf, whereas the POAs in *Whisman* did not.[3]  To arbitrate a dispute under the FAA, an attorney-in-fact must waive the right to a trial by jury, at least implicitly. *See* 9 U.S.C. § 2.  The timing of the waiver is inconsequential.

### E. Unconscionability

Watkins's contention that the arbitration agreement is unconscionable is baseless.  The Kentucky Supreme Court has concluded that the Kentucky "state Constitution and statutes favor the enforceability of arbitration agreements." *Schnuerle v. Insight Cos. Co., L.P.*, 376 S.W.3d 561, 577 (Ky. 2012).  It found that the purpose of the FAA was "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *see Schnuerle*, 376 S.W.3d at 577.  *See generally Rizzo v. GGNSC Holdings, LLC*, No. 10-45-HRW, 2011 WL 4565785, at *2 (E.D. Ky. Sept. 29, 2011).  Accordingly, the Court will apply Kentucky law regarding unconscionability of contracts to the arbitration agreement here.

Generally, "absent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms." *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky. Ct. App. 2001); *see Tracy*,

---

[3] Irrespective of *Whisman*'s application, Justice Abramson's dissenting opinion is more consistent with applicable federal law than the majority opinion. *Whisman*, 2015 WL 5634309, at *36 (Abramson, J., dissenting) ("[A]s the United States Supreme Court has made absolutely clear, what state law cannot do directly—disfavor arbitration—it also cannot do indirectly by favoring arbitration's correlative opposite, a judicial trial.  Since that is the express purpose of the rule the majority pronounces and since the application of that rule will clearly have a disproportionate effect on the ability of agents to enter arbitration agreements (as opposed to other contracts), the majority's new rule is plainly invalid.").

2015 WL 1481149, at *12.  A narrow exception is the doctrine of unconscionability, which is only to be used to police against "one-sided, oppressive and unfairly surprising contracts, and not against the consequences per se of uneven bargaining power or even a simple old-fashioned bad bargain." *Conseco*, 47 S.W.3d at 341; *see Tracy*, 2015 WL 1481149, at *12.

There are two forms of unconscionability: procedural unconscionability, "which pertains to the process by which an agreement is reached," and substantive unconscionability, which "refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." *Conseco*, 47 S.W.3d at 342 n.22 (citation omitted).  There was nothing either procedurally or substantively unconscionable about this arbitration agreement.  Watkins's procedural unconscionability claim rests on the fact that she had to go through a lengthy admissions process in which she signed numerous agreements.  (D.N. 8-1, PageID # 133)  But many situations—such as buying a house or a car, visiting the doctor, or starting a new job—involve a lengthy process in which an individual must complete a substantial amount of paperwork.  This alone does not make a contract procedurally unconscionable.

Nor is the contract substantively unconscionable.  Watkins complains about the disparity of bargaining power.  (D.N. 8-1, PageID # 133)  The Court sympathizes with the "emotional and difficult task of seeking necessary care for a loved-one from an unknown third party." (*Id.*)  But a mere difference in bargaining power does not amount to unconscionability.  *Conseco*, 47 S.W.3d at 341.  Moreover, nothing about the agreement itself is substantively unconscionable: It is plainly stated; its implications are in bold type; it does not limit recovery; it is reciprocal; and Watkins could have opted out of the agreement within thirty days of signing it.  (D.N. 1-2)  The Court rejects Watkins's suggestion that arbitration agreements in the context of nursing home admissions are per se unconscionable.  *See Tracy*, 2015 WL 1481149, at *13; *Brookdale Sr.*

10

*Living, Inc. v. Stacy*, 27 F. Supp. 3d 776 (E.D. Ky. 2014); *Brookdale Sr. Living, Inc. v. Caudill*, No. 5:14-098-DCR, 2014 WL 3420783, at *9-10 (E.D. Ky. July 10, 2014).

### F. Anti-Injunction Act

Finally, Watkins argues that the Anti-Injunction Act prevents this Court from enjoining the state court action as a matter of law, and that because this action is to compel arbitration, it should be dismissed.  (D.N. 8-1, PageID # 134)  But "a district court's injunction of state-court proceedings after compelling arbitration [does] not violate the Anti–Injunction Act."  *GGNSC Louisville Hillcreek, LLC v. Warner*, No. 3:13-CV-752-H, 2013 WL 6796421, at *10 (W.D. Ky. Dec. 19, 2013) (citing *Great Earth*, 288 F.3d at 893).  An injunction when compelling arbitration falls into the "necessary . . . to protect or effectuate [the district court's own] judgments" exception to the Anti-Injunction Act.  *Great Earth*, 288 F.3d at 893; *see* 28 U.S.C. § 2283.  Indeed, "[a]n injunction of the state proceedings is necessary to protect the final judgment of the district court on this issue."  *Great Earth*, 288 F.3d at 893.  Thus, enjoining Watkins from proceeding against GGNSC in the state court action will not violate the Anti-Injunction Act if the Court grants GGNSC's motion to compel arbitration.

### III.    MOTION TO COMPEL ARBITRATION

The Court will grant GGNSC's motion to compel arbitration and enjoin the state court action.  (D.N. 5)  The FAA states that

> [a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

11

9 U.S.C. § 4.  The FAA also provides that an arbitration clause in "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  When a party asks to compel arbitration, this Court must (1) "determine whether the parties agreed to arbitrate"; (2) "determine the scope of that agreement"; (3) "if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable"; and (4) "if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration."  *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

Here, the parties agreed to arbitrate.  Watkins signed a valid arbitration agreement on behalf of Walton, who had given Watkins her POA.  (D.N. 6-1, PageID # 86; D.N. 1-2)

The arbitration agreement covers all of Watkins's claims in the state court action.  The agreement states that "[t]his agreement applies to any and all disputes arising out of or in any way relating to this Agreement or the Resident's stay at the Facility."  (D.N. 1-2, PageID # 39)  Watkins's claims in the state court action all arise out of Walton's stay at Golden LivingCenter-Hillcreek.  (D.N. 1, PageID # 5)

Watkins does not allege any federal statutory claims.  And because all of the claims and parties in the federal action are subject to arbitration, the reminder of the federal proceedings will be stayed.  Consequently, the Court will compel arbitration and stay the state court proceedings.

Watkins's response to GGNSC's motion to compel merely restates her arguments in the motion to dismiss.  (D.N. 19 (contending that the arbitration agreement is not enforceable under the FAA, that the agreement is invalid because it was executed without sufficient authority, and that the agreement is unconscionable))  The Court has already addressed these arguments.

12

## IV.    CONCLUSION

Watkins's motion to dismiss is meritless.  The arbitration agreement is valid and covers all of the claims asserted by Watkins against GGNSC in the Jefferson Circuit Court action. Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)    Plaintiffs' motions to compel arbitration and enjoin the state court action (D.N. 5, 13) are **GRANTED**.  Watkins is **ENJOINED** from proceeding against Plaintiffs in the Jefferson Circuit Court action.  The parties are **COMPELLED** to arbitrate pursuant to the terms of the parties' agreement (D.N. 1-2) the issues which are the subject of Watkins's claims in Jefferson Circuit Court.  Counsel shall promptly inform the Jefferson Circuit Court of this Memorandum Opinion and Order.

(2)    Pursuant to 9 U.S.C. § 3, this proceeding is **STAYED** until the conclusion of the ordered arbitration, at which time the Court will decide whether to enter judgment approving any arbitral award.  The parties shall submit a joint status report every **ninety (90) days** from the date of entry of this Order until the resolution of the arbitration.  The parties shall promptly report on the resolution of the arbitration or of any settlement.

(3)    Plaintiffs' motion for preliminary injunction (D.N. 6) is **DENIED** as moot.

(4)    Defendant Watkins's motion to dismiss (D.N. 8) is **DENIED**.

February 29, 2016

**David J. Hale, Judge**
**United States District Court**